## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**VICKI SCHMIDT, in her official capacity as LIQUIDATOR OF PHYSICIANS STANDARD INSURANCE COMPANY,**

**Plaintiff,**

v.

**MISSOURI PROFESSIONALS MUTUAL-PHYSICIANS PROFESSIONAL INDEMNITY ASSOCIATION et al.,**

**Defendants.**

Case No. 5:20-CV-4047-JAR-ADM

### MEMORANDUM AND ORDER

Plaintiff Vicki Schmidt, in her official capacity as Liquidator of Physicians Standard Insurance Company ("PSIC"), filed suit in the District Court of Shawnee County, Kansas, against eight Defendants. These include: Missouri Professionals Mutual-Physicians Professional Indemnity Association ("MPM-PPIA"); Jonathan Downard; Hansen, Stierberger, Downard, Schroeder & Head LLC ("HSDSH"); Corporate Insurance Services LLC ("CIS"); the Baltic & Mediterranean Company ("BMC"); J. Randy Snodgrass P.C. ("Snodgrass PC"); James Randy Snodgrass; and Timothy Hayden Trout.

On August 25, 2020, Defendants Downard, HSDSH, CIS, and BMC ("Downard Defendants") removed the case to this Court pursuant to 28 U.S.C. § 1332(a), asserting that all eight Defendants resided in Missouri and that the amount in controversy exceeded $75,000.[1]

Plaintiff has now filed a Motion to Remand (Doc. 10) seeking remand to the state court on abstention grounds. The matter is fully briefed, and the Court is prepared to rule. For the

---

[1] The other four Defendants consented to the removal.

reasons explained below, the Court denies Plaintiff's motion for remand but abstains and stays the case.

## I.    Factual Allegations and Procedural Background

*The Parties*

The facts are taken from Plaintiff's Petition filed in state court and are highly summarized below.  Plaintiff Schmidt is the Kansas Commissioner of Insurance ("Commissioner").  She is the court-appointed Liquidator of PSIC, an insolvent medical malpractice insurer.  PSIC was established as a Kansas corporation in 2010, and it was licensed to issue insurance policies to insureds in Kansas and Missouri.  PSIC is in liquidation pursuant to a Final Order and Judgment of Liquidation ("Liquidation Order") effective December 1, 2019.

Defendant MPM-PPIA is a defunct Missouri association malpractice insurer.  Between 2012 and 2018, MPM-PPIA was the majority shareholder of PSIC.  In late 2018, MPM-PPIA filed an action for voluntary commercial receivership in Missouri, and a receiver was appointed on December 31, 2018.  Defendant Downard was an employee, officer, and/or director of both MPM-PPIA and PSIC.  He also served as the chief executive officer and attorney for PSIC and as an attorney for MPM-PPIA.

Defendant HSDSH is a Missouri law firm with its principal place of business in Missouri.  HSDSH was on retainer to provide legal services and was corporate counsel to PSIC and to PSIC's former parent, MPM-PPIA.

Defendant CIS is a Missouri limited liability company with its principal place of business in Missouri.  CIS contracted to provide third-party administrative services to PSIC and MPM-PPIA.

Defendant Snodgrass PC is a Missouri professional corporation with its principal place of business in Missouri. Defendant Snodgrass is a certified public accountant who resides in Missouri. Snodgrass PC and Snodgrass provided accounting services to PSIC and MPM-PPIA.

Defendant BMC is a Missouri limited liability company with its principal place of business in Missouri. BMC was organized in 1994 by Downard and his father. BMC owned property which was leased to PSIC but utilized by CIS for its operations.

Defendant Trout was the former President of MPM-KS (which later changed its name to PSIC) and the President and Managing Director of Missouri Professionals Mutual, a predecessor entity of MPM-PPIA. Trout received payments from PSIC in connection with a non-compete agreement between him and MPM-PPIA.

*The Factual Allegations*

Downard was chief executive officer and general counsel of PSIC. He had a five-year employment agreement with PSIC from 2018 through 2023, to be renewed automatically for another five-year term provided neither party submitted a notice of termination. Under the agreement, PSIC paid Downard a $300,000 annual salary, to be paid in monthly increments of $25,000.

Downard was also executive vice-president and general counsel of MPM-PPIA. In addition, he was also the sole owner and manager of CIS. Downard and his wife drew salaries from CIS.

Downard is also a named partner at the HSDSH law firm. The law firm has two current partners, Downard and Justin Head. PSIC paid HSDSH a monthly retainer of $16,667.67 plus expenses under an agreement for HSDSH to provide legal services to PSIC and serve as its corporate counsel. HSDSH was responsible for "legal compliance with the Kansas Secretary of

State, Kansas Department of Insurance, [and] legal consultation on the day-to-day operations of PSIC," among other things.[2]

HSDSH also had an agreement to provide legal services to and act as corporate counsel for PSIC's majority owner, MPM-PPIA, for $16,665.00 per month plus expenses. Under this agreement, HSDSH was "responsible for the legal formation of the association, incorporation, legal compliance with the Missouri Secretary of State, Missouri Department of Insurance, [and] legal consultation on the day-to-day operations of MPM-PPIA," among other things.[3]

Downard controlled the operations of PSIC, CIS, HSDSH, and MPM-PPIA.

Poor underwriting and underpricing led to chronic financial troubles for MPM-PPIA. In 2016, the Missouri Commissioner of Insurance determined that MPM-PPIA had experienced "consistent underwriting losses, consistent negative net income, consistent surplus deterioration, [and] unfavorable reserve development."[4] This same year, MPM-PPIA attempted to merge with a Missouri stock insurer, Galen Insurance Company, in an attempt to convert MPM-PPIA from a mutual association to a stock insurer. The Missouri Commissioner of Insurance disapproved the MPM-PPIA-Galen transaction because it appeared that both companies were in financial trouble, and the merger was not in the interests of Galen policyholders. The Missouri Commissioner also determined that MPM-PPIA and its officers/directors lacked the "competence, experience and integrity" necessary to approve the proposed transaction.[5]

Downard then orchestrated a Policy Acquisition Agreement under which MPM-PPIA (the majority shareholder of PSIC) transferred its failing insurance business to PSIC. Before the

---

[2] Doc. 1-1 at 6, ¶ 24.

[3] *Id.* ¶ 25.

[4] *Id.* ¶ 28.

[5] *Id.* ¶ 32.

Policy Acquisition Agreement, PSIC had 25 insureds and 14 policies. After it, PSIC had 755 insureds under 342 policies.

Under the Policy Acquisition Agreement, "[a]ll future claims, liabilities, and premiums" under all MPM-PPIA policies transferred to PSIC.[6] In return, MPM-PPIA was to pay PSIC $3,870,196 for the acquisition of the MPM-PPIA policies. This "payment" was in the form of MPM-PPIA returning shares of PSIC's own stock. Downard and J. Randy Snodgrass valued the shares of PSIC stock at $3,870,196. MPM-PPIA did not pay $3,870,196 in cash or give other valuable consideration to PSIC for acquisition of the policies.

In addition, after the Policy Acquisition Agreement, Downard caused PSIC to make monthly payments to Trout for $62,500 allegedly pursuant to a non-compete agreement that Trout had with MPM-PPIA. PSIC was not bound to the non-compete agreement.

In 2018, Downard called the Kansas Department of Insurance ("Department") to notify it of the Policy Acquisition Agreement. The Department disapproved the agreement, but PSIC continued to operate under it. In addition, CIS, Downard, BCM, HSDSH, and Trout continued to receive monthly payments from PSIC.

On May 8, 2019, the Commissioner filed an action against PSIC in the Shawnee County District Court ("Liquidation Court") for the seizure of PSIC and rehabilitation.[7] Ultimately, the PSIC board consented to rehabilitation, and an order of rehabilitation was entered in August 2019. After the company could not be rehabilitated, the Liquidation Court entered its Liquidation Order on December 1, 2019. Per this Liquidation Order, PSIC was declared insolvent and the Commissioner was appointed as Liquidator and "directed to take possession of

---

[6] *Id.* ¶ 39.

[7] Case No. 2019-CV-000351.

the assets of PSIC and to administer such assets under the general supervision of [the Liquidation Court]."[8]  In the Liquidation Court, five Defendants (MPM-PPIA, CIS, BMC, Trout, and Snodgrass PC) have filed a proof of claim against PCIS's estate seeking over four million dollars.

On July 2, 2020, the Commissioner, in her capacity as the Liquidator of PSIC, filed this Petition in the District Court of Shawnee County.  She asserted fourteen claims, including: (1)  fraudulent transfer against MPM-PPIA; (2) breach of fiduciary duty against MPM-PPIA; (3)  fraudulent transfer against Downard; (4) preferential transfer of property against Downard; (5) breach of fiduciary duty against Downard; (6) preferential transfer against HSDSH; (7)  professional negligence/legal malpractice against Downard/HSDSH; (8) fraudulent transfer against CIS; (9) preferential transfer against CIS; (10) professional negligence/accounting malpractice against Snodgrass and Snodgrass PC; (11) civil conspiracy against Downard, HSDSH, Snodgrass, Snodgrass PC, and MPM-PPIA; (12) aiding and abetting against HSDSH, CIS, Snodgrass, and Snodgrass PC; (13) fraudulent transfer against Trout; and (14) fraudulent transfer against BMC.  Four of the five fraudulent transfer claims are brought under the Kansas Uniform Fraudulent Transfer Act ("KUFTA"), K.S.A. § 33-201 *et seq*., and under a provision of the Kansas Insurers Supervision, Rehabilitation and Liquidation Act, K.S.A. § 40-3629.  The three preferential transfer claims are brought under K.S.A. § 40-3631, a provision under the Kansas Insurers Supervision, Rehabilitation and Liquidation Act.

On August 25, 2020, the Downard Defendants, with the consent of the four other Defendants, removed the case to this Court based on diversity jurisdiction.  On September 21,

---

[8] Doc. 1-5 at 4–5, ¶ 5.

2020, Plaintiff filed a Motion to Remand asserting that the Court should abstain from exercising federal jurisdiction pursuant to *Burford v. Sun Oil Co.*[9] and remand the case to state court.

On September 22, 2020, the Downard Defendants filed an Answer and a Counterclaim for tortious interference against PSIC. On this same date, Trout filed an Answer and a Counterclaim. Trout asserted three claims against PSIC, including breach of the reorganization agreement, breach of the noncompetition agreement, and unjust enrichment.

The Downard Defendants and Trout filed a joint response brief opposing Plaintiff's Motion to Remand. Snodgrass and Snodgrass PC requested, and were granted, joinder in the opposition.[10]

On October 16, 2020, the Downard Defendants dismissed their counterclaim without prejudice. On January 19, 2021, Downard, CIS, and BCM filed a Complaint in the District of Kansas against Schmidt, in her capacity as the Kansas Insurance Commissioner, asserting tortious interference with contract claims.[11] The motion currently before the Court is Plaintiff's Motion to Remand.

---

[9] 319 U.S. 315 (1943).

[10] MPM-PPIA has not filed a responsive pleading (or filed a response to Plaintiff's motion to remand). On October 8, 2021, the Court granted MPM-PPIA and Plaintiff's Consent Motion to extend the deadline for MPM-PPIA to file a responsive pleading until October 31, 2020. Doc. 20. On October 28, 2021, however, the Court granted Plaintiff's motion to stay all deadlines, with the exception of the briefing deadlines on the Motion to Remand, until after the Court issues its ruling on the Motion to Remand. Doc. 28. Thus, MPM-PPIA's responsive pleading is not due until fourteen days after this Court's ruling.

[11] Case No. 21-2030-JAR-ADM. HSDSH (one of the Downard Defendants in this case) is not a plaintiff in Case No. 21-2030. In addition, the four other Defendants in this case (Snodgrass, Snodgrass PC, Trout, and MPM-PPIA) are not parties in Case No. 21-2030. PSIC filed a Motion to Dismiss, asserting that the case is barred by the Eleventh Amendment because a suit against the Kansas Commissioner of Insurance is really a suit against Kansas. That motion remains pending.

## II.     Discussion

### A.     Legal Standard and Applicable Law

This case was originally filed in state court. Defendants removed the case by asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff is a Kansas resident and the eight Defendants are all Missouri residents. The amount in controversy exceeds $75,000 because Plaintiff's petition, in part, requests a monetary judgment for the value of the alleged fraudulent transfers, which exceeds one million dollars. Plaintiff does not address the Court's diversity subject matter jurisdiction and thus does not appear to contest it.

Plaintiff nevertheless requests remand of this matter to state court. She asserts that the Court should abstain from exercising jurisdiction pursuant to *Burford v. Sun Oil Co.*[12] Plaintiff also asserts that the Court should apply the *Burford* abstention factors as set forth by the Tenth Circuit in *Grimes v. Crown Life Insurance Co.*[13] In addition, Plaintiff directs the Court to several cases from the District of Kansas discussing *Burford* abstention in the context of insurance liquidation disputes.

Defendants contend that the abstention factors identified by the court in *Grimes* are no longer relevant. They assert that two Supreme Court cases, *New Orleans Public Service, Inc. v. Council of City of New Orleans* ("*NOPSI*")[14] and *Quackenbush v. Allstate Insurance Co.*,[15] narrowed the applicability of the *Burford* abstention doctrine set forth in *Grimes*. Defendants also direct the Court to *Oklahoma ex rel. Doak v. Acrisure Business Outsourcing Services,*

---

[12] 319 U.S. 315 (1943).

[13] 857 F.2d 699 (10th Cir. 1988).

[14] 491 U.S. 350 (1989).

[15] 517 U.S. 706 (1996).

*LLC*,[16] an unpublished 2013 case from the Tenth Circuit, contending that the facts are similar.  In addition, Defendants state that abstention is inappropriate in this case regardless of whether the Court applies the *Grimes* factors.  Finally, Defendants assert that even if the Court chooses to abstain from exercising jurisdiction, the Court must stay the case instead of remanding it to state court.

### 1.  United States Supreme Court and Tenth Circuit Law

Generally, federal courts have a strict duty to exercise the jurisdiction given to them.[17]  In certain limited circumstances, however, the court "may decline to hear the merits of a case even though it has jurisdiction over the matter."[18]  In *Burford*, the United States Supreme Court "held that federal courts should exercise their discretionary power to refuse to hear cases within their jurisdiction when to do so would impair the 'independence of state governments in carrying out their domestic policy.'"[19]

In *Grimes*, the Tenth Circuit addressed the *Burford* abstention doctrine in a declaratory judgment suit brought by the Oklahoma Insurance Commissioner as the liquidator of a life insurance company.[20]  The Tenth Circuit set forth four factors for determining whether abstention may be appropriate.  These factors include:

> (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry; (3) whether state procedures indicate a desire to create

---

[16] 529 F. App'x 886 (10th Cir. 2013).

[17] *Quackenbush*, 517 U.S. at 716 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976)); *see also Hartung v. Sebelius*, 40 F. Supp. 2d 1257, 1259 (D. Kan. 1999) (citation omitted).

[18] *Hartung*, 40 F. Supp. 2d at 1259.

[19] *Grimes*, 857 F.2d at 703 (quoting *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943)).

[20] *Id.* at 700.

special state forums to regulate and adjudicate these issues; and (4) whether difficult or unusual state laws are at issue.[21]

Ultimately, in *Grimes*, the Tenth Circuit determined that the district court should have abstained from hearing the suit and remanded the case back to the Oklahoma state court.[22]

After the *Grimes* decision, the United States Supreme Court decided *NOPSI*, in which it set forth "the principle now commonly referred to as the '*Burford* doctrine.'"[23] Specifically, the Supreme Court noted that

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[24]

In addition, in *Quackenbush*, the Supreme Court again discussed the *Burford* abstention doctrine noting that the power to dismiss "represent[ed] an extraordinary and narrow exception to a district court's duty to adjudicate a controversy properly before it."[25] The court also stated that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."[26] The Supreme Court also noted that in cases "applying abstention principles to damages actions," it had only

---

[21] *Id.* at 704–05 (citations omitted).

[22] *Id.* at 705–07 (addressing the four factors, concluding *Burford* abstention was appropriate, and remanding the case to state court).

[23] *NOPSI*, 491 U.S. 350, 361 (1989).

[24] *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1974)).

[25] *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 707 (1996).

[26] *Id.* at 731.

permitted federal courts "to enter a stay, but we have not permitted them to dismiss the action altogether."[27]

In 2013, the Tenth Circuit decided *Oklahoma ex rel. Doak v. Acrisure Business Outsourcing Services, LLC*.[28]  The parties disagree as to *Doak's* precedential value to this case.  Plaintiff contends that it has no precedential value because it is unpublished and distinguishable from the facts in this case.  Defendants contend that although *Doak* is unpublished, the facts here are similar to the facts in *Doak*, in which the Tenth Circuit determined that *Burford* abstention was inappropriate.

In *Doak*, the receiver for two insurance companies filed two state lawsuits alleging more than nine million dollars in damages and asserting five state law claims, including ones for breach of contract, negligence, breach of fiduciary duty, and constructive fraudulent transfer.[29]  The defendants removed the case to federal court.[30]  After the case proceeded through discovery and the defendants filed a motion for summary judgment, the plaintiff filed a motion to remand to state court asserting that the court should abstain pursuant to *Burford*.[31]  The Western District of Oklahoma granted summary judgment in the defendants' favor and then denied the plaintiff's motion for remand.[32]

On appeal, the Tenth Circuit noted that "the Supreme Court has narrowed application of the *Burford* abstention doctrine" since its decision in *Grimes*.[33]  It went on to state, however, that

---

[27] *Id.* at 730.

[28] 529 F. App'x 886 (10th Cir. 2013).

[29] *Id.* at 889.

[30] *Id.* at 889–90.

[31] *Id.* at 896.

[32] *Id.*

[33] *Id.* at 896–97 (citations omitted).

it "need not decide whether the more narrow tests of *Quackenbush* and *NOPSI* apply [in the case before it], because even applying the broader test in *Grimes*, . . . the district court correctly denied the motion to remand."[34]  The Tenth Circuit then applied the *Grimes* factors. Specifically, the Tenth Circuit found that although there was no federal cause of action, the second and fourth factors did not weigh in favor abstention because the case had nothing to do with the liquidation of the insurers, and there were no difficult or unusual questions of state law.[35]  Accordingly, the Tenth Circuit determined that abstention was not warranted.[36]

2.  District of Kansas Law

There are several cases from the District of Kansas that have addressed *Burford* abstention in the context of insurance liquidation disputes that are also relevant here.  The first case, *Todd v. DSN Dealer Service Network*,[37] was decided after *NOPSI* but before *Quackenbush*.[38]  In *Todd*, the Kansas Insurance Commissioner, as liquidator of an insolvent insurance company, brought suit in state court asserting twelve claims against five defendants.[39] These claims included breach of contract, negligence, breach of fiduciary duty, unjust enrichment, and fraudulent/voidable transfers.[40]  The defendants removed the case to federal

---

[34] *Id.* at 897.

[35] *Id.*  The Tenth Circuit stated that it "was less convinced that the district court correctly found that the third *Grimes* factors favors [the plaintiff]," but it did not matter "because the second and fourth factors were not present."  *Id.*  If the third factor favored abstention, the factors would have been equal.  Presumably, if the factors were equal, abstention would still not have been warranted as abstention is a narrow exception.

[36] *Id.*

[37] 861 F. Supp. 1531 (D. Kan. 1994).

[38] All the District of Kansas cases were decided well before the Tenth Circuit's opinion in *Doak*.

[39] *Id.* at 1533.

[40] *Id.* at 1534.

court on the basis of diversity, and the plaintiff filed a motion to remand arguing that *Burford*

abstention was applicable.[41]

Judge Rogers engaged in a thorough review of the *Burford* abstention doctrine, stating

that he did so "with some trepidation because the scope of the doctrine has remained elusive over

the years due to varying results and abstract verbal formulations."[42]  Judge Rogers ultimately

found that *Burford* abstention was appropriate after considering the factors in the case under both

*NOPSI* and *Grimes*.  Specifically, the factors that weighed in favor of abstention were:

> (1) the strong state interest in regulating insolvent insurers; (2) the
> state's promulgation of a comprehensive scheme for regulating
> insolvent insurance companies; (3) the dominance of state law
> issues in this case; (4) the likely disruptive nature of federal
> review; and (5) the presence of difficult state law issues,
> particularly those arising under the Kansas Liquidation Act, whose
> importance transcends the result in this case.[43]

Judge Rogers then remanded the case to state court.[44]

Three other District of Kansas cases were decided after both *NOPSI* and *Quackenbush*.[45]

All three cases dealt with the same insolvent insurer that was in the process of liquidation and

rehabilitation proceedings in state court.[46]  In each case, the court abstained from hearing the

case.

---

[41] *Id.* at 1534–35.

[42] *Id.* at 1536.  Judge Rogers discussed Supreme Court cases, Tenth Circuit cases, and several opinions
from the District of Kansas issued by Judge Crow.  *See id.* at 1536–39.

[43] *Id.* at 1544.

[44] *Id.*

[45] *In re Universe Life Ins. Co.*, 35 F. Supp. 2d 1297 (D. Kan. 1999); *Hartung v. Sebelius*, 40 F. Supp. 2d
1257 (D. Kan. 1999); *Sebelius v. Universe Life Ins. Co.*, No. 98-4114-RDR, 1999 WL 118018 (D. Kan. Feb. 9,
1999).

[46] *Id.*  All cases involved the same insurance company, Universe Life Insurance Company.

In *In re Universe Life Insurance Co.*, the plaintiff, a rehabilitator of an insolvent insurer (Universe) obtained a judgment in an Idaho state court against another life insurance company (Centennial) that was currently in liquidation proceedings in Kansas state court.[47]  Universe then initiated a garnishment action in Idaho state court to obtain proceeds due to Centennial.[48]  Centennial removed the case to the United States District Court for the District of Idaho, and the case was then transferred to the District of Kansas.[49]  Universe then filed a motion to stay, and Centennial filed a motion to quash the garnishment, or in the alternative, to dismiss the action pursuant to the *Burford* abstention doctrine.[50]

Judge Lungstrum first noted that "abstention from the exercise of federal jurisdiction is the exception rather than the rule," citing *NOPSI* and *Quackenbush*.[51]  He went on to note that the Tenth Circuit had "analyzed the propriety of *Burford* abstention in the insurance liquidation context" in *Grimes*.[52]  Applying the *Grimes* factors, Judge Lungstrum found abstention to be appropriate.  Specifically, Judge Lungstrum noted that "Kansas has formulated a complex and comprehensive statutory scheme governing the liquidation of insolvent insurers . . . and the issues presented in this garnishment action are solely issues of state law which are directly relevant to that statutory scheme."[53]  He further found that the Kansas Insurers Supervision, Rehabilitation and Liquidation Act contained special provisions relating to "claims of creditors, including the filing and proof of such claims as well as the priority of distribution of such

---

[47] 35 F. Supp. 2d at 1298.

[48] *Id.*

[49] *Id.* at 1299.

[50] *Id.* at 1298.

[51] *Id.* at 1299.

[52] *Id.* (citing *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699 (10th Cir. 1988)).

[53] *Id.* at 1301 (citing Kansas Insurers Supervision, Rehabilitation and Liquidation Act, K.S.A. § 40-3605 *et seq.*).

claims," and "[t]hese provisions clearly demonstrate a desire to create a special state forum to regulate and adjudicate issues relating to the liquidation of an insolvent insurance company."[54] Finally, Judge Lungstrum found that a stay was appropriate until the liquidation proceeding in state court concluded.[55]

Judge Rogers took a slightly different approach in the two cases before him, *Hartung v. Sebelius* and *Sebelius v. Universe Life Insurance Co.*[56] He agreed with the analysis of Judge Lungstrum in *In re Universe Life Insurance Co.* and found that the "claim involving an insolvent insurer in federal court while a state insolvency proceeding is pending would usurp the state's control over the liquidation proceeding by allowing the claimant to preempt others in the distribution of the insurance company's assets."[57] Thus, he found *Burford* abstention appropriate. Judge Rogers, however, with very little analysis, noted *Quackenbush*'s holding, but found that both cases should be dismissed rather than stayed.[58]

## B.     The Law as Related to this Case

The question here is how these principles work in the current case before the Court. The Court agrees that the *Burford* abstention doctrine is a very narrow one as articulated by the United States Supreme Court in *NOPSI* and *Quackenbush*. However, the four factors set forth in

---

[54] *Id.* at 1301–02.

[55] *Id.* at 1303 (citing *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)).

[56] *Hartung v. Sebelius*, 40 F. Supp. 2d 1257 (D. Kan. 1999); *Sebelius v. Universe Life Ins. Co.*, No. 98-4114-RDR, 1999 WL 118018 (D. Kan. Feb. 9, 1999).

[57] *Hartung*, 40 F. Supp. 2d at 1261; *Sebelius,* 1999 WL 118018, at *4.

[58] *Hartung*, 40 F. Supp. 2d at 1261 (stating that the nature of the relief sought allows the court to either stay or dismiss the action and "[a]fter a careful review of the circumstances surrounding this case," the court believes that dismissal is warranted); *Sebelius*, 1999 WL 118018, at *4 (stating that because the plaintiffs sought "to avoid allege preferences in the context of insolvency proceedings," they sought equitable relief and dismissing the case "[g]iven the nature of the relief sought and the circumstances present in this case.").

*Grimes* remain useful when determining whether *Burford* abstention is applicable, particularly in the insurance liquidation context.[59]

In this case, the factors weigh in favor of abstention. Here, the suit is not based on an exclusive federal cause of action, as there are only state law claims asserted. Defendants argue that they have an interest in diversity jurisdiction because it provides a neutral forum for the claims and that this protection should not be taken away lightly. They appear to argue that the federal forum will protect the out-of-state Defendants from a perceived bias. In addition, Defendants argue that the interest in federal diversity jurisdiction outweighs the state's interest in regulating insurance liquidation proceedings.

While the Court agrees that common law state claims having no impact on the liquidation proceedings would be entitled to proceed in federal court, as will be noted below, the claims in this case seem to directly impact the liquidation proceedings. And although the Court recognizes that there may be a federal interest in diversity jurisdiction, there are no federal issues in this case. Indeed, *Quackenbush* counsels that in considering *Burford* abstention, a court should balance the "strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interest in maintaining uniformity in the treatment of an essentially local problem."[60] Here, there is no federal right at issue. In addition,

---

[59] *See Oklahoma ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC*, 529 F. App'x 886, 897 (10th Cir. 2013) (noting that the court would not decide whether the more narrow tests of *Quackenbush* or *NOPSI* applied in the case because the broader test in *Grimes* demonstrated that *Burford* abstention was inappropriate); *In re Universe Life Ins. Co.*, 35 F. Supp. 2d 1297, 1300 n.6 (D. Kan. 1999) ("Although the vitality of *Grimes* has been called into question in light of *NOPSI*, . . . the only aspect of *Grimes* that appears to be rendered inaccurate in light of *NOPSI* is the extent to which *Grimes* suggests that a federal court in a damages action could dismiss the case under *Burford*. There is no reason to believe that *NOPSI* has abrogated the rule favoring abstention in deference to state insurance insolvency or liquidation proceedings."); *see also Overflow Energy, L.L.C. v. Bd. of Cnty. Cmm'rs of the Cnty. of Roger Mills*, No. CIV-13-1136-HE, 2014 WL 359211, at *2 (W.D. Okla. Feb. 3, 2014) ("Although there is some basis for concluding *Grimes* may have viewed *Burford* abstention too broadly, it continues to provide useful guidance as to factors to be weighed.").

[60] *Quackenbush*, 517 U.S. at 728 (internal quotation marks and citations omitted).

Kansas enacted a comprehensive statutory scheme to provide uniformity in the insurance liquidation context. As noted in *Grimes*,

> The McCarran-Ferguson Act thus becomes relevant . . . not because it removes diversity jurisdiction from the federal courts in insurance matters, but because it encourages the states to formulate their own systems to regulate insurers doing business in their states. Therefore, in instances where states have responded to this congressional policy by formulating complex and specialized administrative and judicial schemes to regulate insurers, especially the liquidation of insolvent insurers, it becomes increasingly possible that the exercise by a federal court of its jurisdiction will prove to be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[61]

There are no federal causes of action asserted here, and the Court is unconvinced that the state forum is biased against out-of-state defendants. Furthermore, as will be noted below, this case will simply be stayed until the state liquidation proceeding concludes, and the state court makes its ruling on the issues before it. Thus, Defendants still have the opportunity for the claims to be heard in federal court. Accordingly, this factor weighs in favor of abstention.

As to whether the suit requires this Court to determine issues directly relevant to the liquidation proceedings, the parties offer different views. Plaintiff contends that the issues could not be more intertwined. She states that five Defendants have filed proofs of claim in the liquidation court, totaling more than four million dollars, and some of the bases for Defendants' proofs of claim are related to the claims asserted by Plaintiff in this case. For example, Plaintiff brings a fraudulent transfer claim against MPM-PPIA asserting that PSIC did not receive reasonably equivalent value for transfers for cash and the assumption of liabilities. In the

---

[61] *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 703 (10th Cir. 1988) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

liquidation court, the receiver for MPM-PPIA has filed a proof of claim related to this same fraudulent transfer.

Defendants argue that Plaintiff attempts to add preferential and fraudulent transfer claims to create an inference that the claims are related to the liquidation proceeding. Yet, Defendants fail to acknowledge that the fraudulent and preferential transfer claims are not stray claims but instead dominate the causes of action in the Petition. Indeed, eight of the fourteen claims are fraudulent or preferential transfer claims. And seven of these eight claims are asserted under the Kansas Insurers Supervision, Rehabilitation and Liquidation Act. In addition, the determination of these fraudulent transfer claims relates to the five proofs of claim filed in the liquidation court, and the preferential transfer claims are directly relevant to the liquidation proceeding. Thus, the Court finds that the issues presented here are significantly and directly relevant to the liquidation proceeding. Accordingly, the second factor also weighs in favor of abstention.

In addition, Kansas has a comprehensive system of liquidation for insolvent insurers. Defendants concede that Kansas unquestionably created a comprehensive scheme to regulate insurance liquidation proceedings, including a special state forum, generally. They contend, however, that the act does not limit or require fraudulent transfer claims to be brought in this special state forum and that the act even provides that the liquidator can bring suit in different courts.[62] The defendants in *Todd* asserted a similar argument, and the court there found that "[a]lthough the [Kansas Insurers Supervision, Rehabilitation and Liquidation] Act does allow the liquidator in special circumstances to proceed in other avenues, the Act contemplates that claims such as those asserted in this case will be brought in the District Court of Shawnee County,

---

[62] *See* K.S.A. § 40-3625(a)(14) (stating that the liquidator has the power to institute suits and legal proceedings in this state or outside this state).

Kansas."[63]  "[T]he Kansas statutory scheme creates a special state forum to adjudicate and regulate the issues 'preliminary to, incidental to or relating to' the liquidation proceedings of insolvent insurance companies."[64]  Here, Kansas has a special forum to determine insurance liquidation proceedings, and the claims brought in this case appear directly related to the liquidation proceeding.  Thus, this factor weighs in favor of abstention too.

Finally, whether difficult or unusual state laws are at issue is up for debate.  There are several claims that are standard tort claims.  However, there are also eight claims for fraudulent or preferential transfer against six Defendants.  As noted above, all of these claims are asserted pursuant to a provision of the Kansas Insurers Supervision, Rehabilitation and Liquidation Act.[65]  Plaintiff asserts that the court in *Todd* found that fraudulent transfer claims under the Kansas Insurers Supervision, Rehabilitation and Liquidation Act "raise difficult issues which have not been addressed by the Kansas courts" and could "have a significant impact on the development of Kansas public policy in insurance liquidation law" so that "[t]he presence of these claims under the Kansas Liquidation Act distinguishes this case from those relied upon by the defendants where ordinary contract and tort claims were all that were asserted."[66]  Defendants claim that fraudulent or preferential transfer claims, although not brought under the Kansas Insurers Supervision, Rehabilitation and Liquidation Act, are routinely litigated in both state and federal courts.  In addition, Defendants assert that to the extent that *Todd* found that a decision on these types of claims may have an impact on Kansas law, there have been no reported

---

[63] *Todd v. DSN Dealer Serv. Network*, 861 F. Supp. 1531, 1544 (D. Kan. 1994) (citing K.S.A. § 40-3608(b) and (d)).

[64] *Id.*; *see also In re Universe Life Ins. Co.*, 35 F. Supp. 2d 1297, 1301 (D. Kan. 1999) (noting Kansas's comprehensive statutory scheme for liquidation of insolvent insurers).

[65] Five of the fraudulent transfer claims are also brought under KUFTA.

[66] *Todd*, 861 F. Supp. at 1543.

decisions since that time.  Finally, Defendants contend that the Tenth Circuit found in *Doak* that these type of ordinary tort claims do not impact liquidation proceedings.

Defendants are correct that in the almost thirty years since *Todd* was decided, Kansas courts have not issued opinions relating to the Kansas Insurers Supervision, Rehabilitation and Liquidation Act or specifically the provisions under which Plaintiff brings her claims.  However, the fact remains that the issues and claims in this case could bear on the comprehensive statutory scheme enacted by the Kansas legislature.  Furthermore, the Kansas Insurers Supervision, Rehabilitation and Liquidation Act contemplates and specifies that liquidation proceedings take place in a Kansas court, specifically the Shawnee County District Court.[67]  Although the Court notes that fraudulent and preferential transfer claims are actively litigated in a variety of courts, these claims would still have a bearing on the interpretation of these type of claims under the Kansas Insurers Supervision, Rehabilitation and Liquidation Act.[68]  In contrast to the claims asserted in *Doak*—in which the ordinary state law claims dominated the claims in the case— here, Plaintiff brings eight fraudulent or preferential transfer claims, and all of these claims are brought pursuant to the Kansas Insurers Supervision, Rehabilitation and Liquidation Act.[69]  Thus, this factor also weighs in favor of abstention.

Furthermore, the principles set forth in *NOPSI* apply as well.  Here, the exercise of federal jurisdiction at the present time would be disruptive to the state efforts to establish a

---

[67] *See* K.S.A. § 40-3631(a)–(k) (setting forth the procedures for avoiding preferential transfers and the jurisdiction of the Shawnee County District Court to hear these matters).

[68] The breach of fiduciary duty and negligence claims are typical claims that are not difficult or unusual. The Court also recognizes that fraudulent and preferential transfer claims follow a typical pattern as well.  However, as noted above, the fraudulent and preferential transfer claims in this case are brought under the Kansas Insurers Supervision, Rehabilitation and Liquidation Act and appear relate to the insolvency proceeding.

[69] *See Oklahoma ex rel. Doak v. Acrisure Bus.Outsourcing Servs., LLC,* 529 F. App'x 886, 889 (10th Cir. 2013).  The Tenth Circuit noted that the district court did not decide whether Oklahoma or Michigan law applied to the fraudulent transfer claim because the law was the same in both jurisdictions.  *Id.* at 893.  Thus, the plaintiff did not bring the constructive fraudulent transfer claim pursuant to a specific statutory scheme set forth in Oklahoma.

coherent policy with regard to state insurance liquidation proceedings. As noted above, Kansas has a comprehensive insurance liquidation process. Plaintiff, as the liquidator of the insurance company, asserts multiple claims in an effort to recover money related to the liquidation proceeding. Five of the eight Defendants in this case have proofs of claim in the liquidation court, and the claims here are related.

In addition, the Court finds the discussion in *Todd* about the *NOPSI* principles for *Burford* abstention persuasive on this matter. Specifically, as noted above, Judge Rogers found that the claims asserted under the Kansas Insurers Supervision, Rehabilitation and Liquidation Act could "have a significant impact on the development of Kansas public policy in insurance liquidation law."[70] He also stated that he was "concerned that any efforts by the court in this case may disrupt the liquidation proceedings" especially because one of the defendants had filed a claim for over two million dollars in the liquidation proceeding.[71] Those factors are present here, too, as Defendants in this case have filed proofs of claim exceeding four million dollars. Thus, the Court finds that in view of all the circumstances, *Burford* abstention is appropriate.

The final question is whether dismissal or a stay is appropriate. Plaintiff only briefly addresses this question. She states that the *Quackenbush* decision *permits* a court to remand a case when some equitable relief is being sought. This contention, however, appears to be a stretch. In *Quackenbush*, the Supreme Court stated that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."[72] It also stated that in cases involving damages, the court has not "permitted them to dismiss the action altogether" and found that because the case before

---

[70] *Todd*, 861 F. Supp. at 1543.

[71] *Id.*

[72] *Quackenbush v. Allstate*, 517 U.S. 706, 731 (1996).

it was a damages action, the district court's "remand order was an unwarranted application of the *Burford* doctrine."[73]

Here, Plaintiff states that she seeks equitable relief.  But it is clear from Plaintiff's Petition that she also seeks monetary damages.[74]  Indeed, the Petition asserts several causes of action for fraudulent transfer or preferential transfer that seek to avoid and recover the amount of money transferred.  Specifically, Plaintiff's first claim against MPM-PPIA asserts a fraudulent transfer claim and seeks, among other things, a money judgment in the amount of the alleged fraudulent transfer.[75]  Furthermore, Plaintiff asserts several other claims that seek monetary damages.  For example, Plaintiff brings a breach of fiduciary duty claim against MPM-PPIA and specifically states she seeks judgment in an amount in excess of $75,000.  Thus, this case falls into the category of cases seeking damages, and pursuant to *Quackenbush*, the Court cannot dismiss and remand the case.  Instead, the Court must stay the case until the state proceedings conclude.[76]

---

[73] *Id.* at 730–31; *see also In re Universe Life Ins. Co.*, 35 F. Supp. 2d 1297, 1303 (D. Kan. 1999) (noting that the court would "abstain under *Burford* from exercising its jurisdiction" but "[c]onsistent with the Supreme Court's directive in *Quackenbush*, . . . the court [could] not dismiss the action but [could] simply stay the action until the liquidation proceedings in state court reach a conclusion."); *Oddo Dev. Co. v. City of Leawood,* No. 08-2616-JWL, 2009 WL 975139, at *2 (D. Kan. Apr. 9, 2009) ("The Supreme Court has made clear . . . that under its abstention doctrines, a court may dismiss or remand a case only if the relief sought is merely equitable or discretionary with the court; in damages actions, on the other hand, the court may only abstain by entering a stay of proceedings.").

[74] The Court notes again that Plaintiff did not address Defendants' removal based on diversity jurisdiction. Because diversity cases also require that the amount in controversy exceed $75,000, it appears that Plaintiff implicitly recognizes that the case against Defendants seeks monetary damages.

[75] Doc. 1-1 at 16.  The Court notes that Judge Rogers found in *Sebelius* that seeking to avoid alleged preferences in the context of insolvency proceedings have "traditionally been considered within the equitable powers of the court."  *Sebelius v. Universe Life Ins. Co.*, 1999 WL 118018, at *4 (D. Kan. Feb. 9, 1999).  Judge Rogers, however, did not expand on this statement or cite to cases holding as such.

[76] The Court recognizes that it would appear to be more efficient and beneficial for the Liquidation Court to decide the claims asserted here as they appear to be related to the liquidation proceeding.  The Court, however, is constrained by *Quackenbush* to stay the case rather than dismiss and remand the case to state court.  After the liquidation proceeding has concluded, the claims will then proceed.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Remand (Doc. 10) is denied. The Court, however, stays this action until the liquidation proceedings have concluded in state court. The parties are directed to provide a status update in 90 days.

**IT IS SO ORDERED.**

Dated: June 21, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
